IRMA D. DOLGE, Appellant, *v.* JERRY E. MASEK, EVELYN YOUNGMAN and ROBERT H. YOUNG-MAN, Her Husband, Respondents.

No. 3760

March 24, 1954.                    268 P.2d 919.

*Morse and Graves,* of Las Vegas, for Appellant.

*Hawkins and Cannon,* of Las Vegas, for Respondent.

## OPINION

By the Court MERRILL, J.:

This is a suit for specific performance of an oral agreement. The question involved upon this appeal is whether the oral proceedings of the parties actually culminated in a final agreement or whether assent was withheld until such time as the agreement might be reduced to writing and signed. The trial court found that an enforceable oral agreement had been reached and rendered a decree of specific performance of the terms thereof against the defendant below, who has taken this appeal.

In January, 1949, Jerry G. Masek died, leaving surviving him his widow, Irma Masek (now Irma Masek Dolge), the appellant herein and two children: Evelyn Youngman and Jerry E. Masek, respondents herein. Decedent had left as last will and testament an instrument purporting to be a holograph. Appellant offered

the will for probate and was met by a contest filed by respondents who claimed undue influence on the part of appellant and that the instrument in truth was not a holograph and did not possess the formal requisites of a will.

Thereupon negotiations commenced for settlement of the dispute. These negotiations disclosed that the major questions involved were as to the extent of the estate which the widow might claim to pass under the terms of the will. Respondents had been interested with decedent in certain businesses. Decedent's interests in these, they claimed, passed direct to them pursuant to partnership agreement.

In the course of their negotiations the parties in November, 1949, conferred in the office of respondents' attorney who then prepared in writing a form of settlement agreement. This was submitted to appellant early in 1950 and, after consideration, was rejected by her as unsatisfactory. A further conference was held and a second draft of agreement was prepared by appellant's attorney. This draft, after consideration, was also rejected by appellant. On June 13, 1950, a third conference was held in an attempt to eliminate the remaining areas of difference. All parties were present together with their attorneys. The second draft was used as a basis for discussion. Each paragraph was read. Changes to be made were noted in the margin. When the entire draft had thus been covered, each party was interrogated by respondents' attorney and each expressed approval of the terms of the settlement. Respondent Masek pressed the point further. He testified that he stated, "If the agreement wasn't agreeable let's don't go to the trouble and expense of drawing up another agreement if we are not in accord. Let's settle it while we are here together." He testified that appellant answered, "Son, I am satisfied."

It was understood that the settlement was to be reduced to writing by appellant's attorney. This was

done. The result was an 18-page document of considerable complexity providing in detail for a division of the estate of decedent in lieu of the division provided by will, and, as expressed by recital, resolving five other disputes between the parties "in addition to the issues joined in the aforesaid will contest." The document was submitted to respondents and in due course was signed by them. It was never signed by appellant. She does not dispute the fact that the writing reflects the understanding of the parties as reached at their June 13, 1950, conference. Her refusal to sign was for the reason that upon further consideration she had concluded that the settlement was not fair. She wanted more. She communicated her views in this respect to respondents in October, 1950. They flatly rejected her proposition and subsequently commenced this action.

Following the conference of June 13, 1950, and before signing the written document based thereon, was appellant free to change her mind? She testified that in her view the agreement was a "tentative" one. The attorney who represented her during the negotiations testified, "It was my understanding that the agreement would not become effective until signed by all parties and approved by their attorneys."

Appellant refers us to the following language of this court in Morrill v. Tehama Consolidated Mill & Mining Co., 10 Nev. 125, 133: "It is true the parties verbally agreed to the terms of the contract as stated in the complaint, but it was to be reduced to writing and signed by both parties. * * * It is essential to the existence of every contract, that there should be a reciprocal assent to a definite proposition, and when the parties to a proposed contract have themselves fixed the manner in which their assent is to be manifested, an assent thereto, in any other or different mode, will not .be presumed."

Respondents refer us to the following language of this court in Micheletti v. Fugitt, 61 Nev. 478, 489, 134 P.2d

99, 104, "Where a complete contract was made orally, the fact that it was expected that a written contract would afterwards be signed, embodying the terms of the oral contract, does not prevent the oral contract from taking effect." See also: annotations 122 A.L.R. 1217, 165 A.L.R. 756.

The significance of this language in the light of the earlier expression in the Morrill case would appear to be that the mere expectation that a written document is to be prepared and executed embodying an oral agreement does not in and of itself necessarily signify that the parties have fixed such execution as the manner in which their assent is to be manifested or that until such execution is had the oral contract shall be without binding force. In Micheletti v. Fugitt we find assent to the oral contract and intent to be bound thereby evidenced by the fact that the assenting party had operated under the agreement for some time before finally repudiating it.

The problem has been well and simply expressed in Mississippi and Dominion Steamship Company v. Swift, 86 Me. 248, 258, 29 A. 1063, 1067, and helpful suggestions are there made as to its solution. It is stated, "If the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed. In determining which view is entertained in any particular case, several circumstances may be helpful, as: whether the contract is of that class which are usually found to be in writing; whether it is of such nature as to need a formal writing for its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations."

It should be borne in mind that some measure of agreement is usually manifested as a basis for preparation of a written draft of agreement. If upon rejection of such draft, such manifestation of agreement is to be held to constitute binding contractual assent, the evidence that the parties had intended presently to be bound should, in our view, be convincing and subject to no other reasonable interpretation. Such is not the case before us. The language and provisions of the contract itself preclude such an interpretation.

Among the recitals of the final writing is the following: "Whereas the parties hereto desire, by the making, execution and delivery of this Agreement * * * to accomplish the following (setting forth the purposes of the settlement) * * *." The document further provides that such recitals "shall be deemed to bind the parties hereto with contractual force and effect." Paragraph 16 of the final writing provides: "Each of the parties to this agreement hereby declares, acknowledges and agrees that he, she, or they, have carefully read and considered this agreement and fully understand the same, and that this agreement has been read, explained, and interpreted to each of them by their respective attorneys, and that each of them has made and entered into this agreement freely and voluntarily and upon a full understanding of the same." This paragraph and the quoted recitals had been included in the second draft which had been so carefully considered by the parties at their June 13, 1950, conference and, with their approval, were incorporated without change in the final writing. Both the second draft and the final writing contained signature lines for the attorneys of the parties under the words, "Approved as to legal effect."

In our view these provisions and expressions indicate an intent that assent was to be withheld until the agreement had been reduced to final written form and had, in such form, been considered, explained and approved by the attorneys for the parties and that assent was

then to be manifested by execution of the writing. Each consideration suggested in Mississippi and Dominion Steamship Company v. Swift, supra, lends support to such conclusion.

The language of the proposed agreement provides more than a mere indication of such intent, however. Intent is conclusively established by further provisions. Paragraph Eight of both the final writing and the second draft, provides that respondents "each for themselves, their heirs, executors, administrators and assigns, do hereby forever waive, release, remise and relinquish to First Party, [appellant,] her heirs, executors, administrators and assigns, any right, title and interest, if any, which either * * * have ever had or have ever claimed to have in and to any of the following described property, * * *." Among the ten items of property then specified are a dwelling house in the city of Las Vegas, a cabin site at Charleston Park, Clark County, a promissory note secured by trust deed upon realty located in Las Vegas. Section 1527, N.C.L.1929, provides: "No estate, or interest in lands, other than for leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance, in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing." It is clear that the release which the parties contemplated the agreement would accomplish could not have been accomplished save by execution of the written instrument. To hold that appellant immediately became bound by the oral agreement under the circumstances would be to deprive the agreement of mutuality for the reason that the oral proceedings in which the parties had participated could not have bound respondents to their release under the statute of frauds.

Respondents assert a change of position and partial performance in reliance upon the oral contract. The only change of position from which detriment may be found was respondents' action in dismissing the will contest in July, 1951. The dismissal, made in open court at the time set for the hearing of the contest, was expressly based upon what respondents there characterized as their obligations under the oral contract. By that time, however, the settlement had been repudiated by appellant as respondents well knew. She had made her further demands upon respondents which they had rejected. She had commenced an action for accounting against them wholly inconsistent with the terms of settlement. She had taken the deposition of respondent Masek as an adverse witness for use upon the will contest. The dismissal of the contest by respondents under the circumstances must be regarded as wholly voluntary It was made not in reliance upon, but despite the actions of appellant.

Judgment reversed with costs and case remanded with instructions that judgment be entered for the defendant.

EATHER, C. J., and BADT, J., concur.

ON PETITION FOR REHEARING

May 5, 1954.

*Per curiam:*

**Rehearing denied.**